SUMNER H. PIERCE & another[1] vs. SENTRY INSURANCE.

Norfolk.  May 8, 1981. — June 22, 1981.

Present: GREANEY, CUTTER, & KASS, JJ.

*Insurance*, Fire, Cancellation.

The failure of an insurer to give notice of the cancellation of a home
    owner's insurance policy, to the mortgagee of the real estate, as re-
    quired by G. L. c. 175, § 99, did not render the cancellation ineffec-
    tive as to the insured who had received proper written notice.
    [125-128]

CIVIL ACTION commenced in the Superior Court on March
22, 1977.

The case was heard by *Meyer*, J., on motion for summary
judgment.

*John W. Marshall* (*Carol Lazarus* with him) for the
plaintiffs.

*Gerald W. Motejunas* for the defendant.

KASS, J.  Approximately nine months after the cancella-
tion of their home owner's insurance policy for nonpayment
of the premium, the plaintiffs, Roberta and Sumner H.
Pierce, sustained a fire loss.  The sole question before us is
whether the cancellation was valid under G. L. c. 175, § 99,
as amended through St. 1974, c. 498, § 1.  Section 99 estab-
lishes a standard form of fire insurance policy for use in
Massachusetts.  See *O'Roak* v. *Lloyds Cas. Co.*, 285 Mass.
532, 535 (1934).  It provides that a "policy may be can-
celled[2] . . . by giving to the insured and to any mortgagee to
whom this policy is payable twenty days' written notice of

---

[1] Roberta Pierce.

[2] Assuming the occurrences of grounds for cancellation which are set
out in the statute.  One of these is nonpayment of a premium.

cancellation . . . ."  In view of a certified mail return receipt bearing the signature of Roberta Pierce, the plaintiffs do not dispute that they received Sentry's written notice of cancellation.  They base their claim of invalid notice on the ground that Sentry failed to notify the mortgagee of the plaintiffs' real estate, Suffolk Franklin Savings Bank, of the cancellation.  The statute is cast in the conjunctive, i.e., it requires notice "to the insured and to any mortgagee" and, therefore, the plaintiffs argue, a notice only to the insured is insufficient, even as to the insured.  Upon a motion for summary judgment, a judge of the Superior Court ruled that notice of cancellation was legally sufficient as to the insured and judgment entered for Sentry.  We affirm.

It is the general rule that conditions imposed with respect to giving notice of cancellation of insurance must be strictly followed.  *Gulesian* v. *Senibaldi,* 289 Mass. 384, 387 (1935).  *White* v. *Edwards,* 352 Mass. 655, 657 (1967).  *Fields* v. *Parsons,* 353 Mass. 706, 707 (1968).  Each of those cases had to do with cancellation of compulsory motor vehicle liability insurance and turned in part on the failure of the notices to provide the Registrar of Motor Vehicles with the information he requires to perform his duties.  That is, the defects were of substance, not formal.  *Gulesian* v. *Senibaldi,* 289 Mass. at 387.  But the rule that notices of cancellation must comply with the statutory imperatives has been announced in cases dealing with fire insurance as well.  *Michelson* v. *Franklin Fire Ins. Co.,* 252 Mass. 336, 340 (1925).  *Strong* v. *Merchants Mut. Ins. Co.,* 2 Mass. App. Ct. 142, 148 (1974).  In the *Michelson* case the insured did not receive any written notice of cancellation at all.  In the *Strong* case the insured was not notified that he might recover the excess of a paid premium on demand.  In either instance the prejudice to the persons insured, in that they were misled or inadequately alerted, was obvious.  See generally 17 Anderson, Couch's Cyclopedia of Insurance Law § 67:155 (2d ed. 1967).

Notice to the insured and notice to the mortgagee have discrete purposes, however, and it is difficult to see how, as to the party who receives notice, a failure to give notice to

the other, can be anything but merely formal. All the cases we have discussed combine defects of form with disadvantage to the person who received the defective notice. Recognizing this difficulty, the plaintiffs speculate that if their bank had been notified of their nonpayment of insurance premiums, the bank would have called their delinquency to attention and the Pierces would have attended to what they had previously ignored or neglected. We are disinclined to engage in these ruminations. Notice to the bank might also have triggered foreclosure proceedings, as occurred in *Strong* v. *Merchants Mut. Ins. Co., supra.*

We are the less inclined to so speculate in view of our cases which have treated the loss payable to the mortgagee provisions of insurance policies as a contract "somewhat different from that with the mortgagor." *Palmer Sav. Bank* v. *Insurance Co. of No. America,* 166 Mass. 189, 194 (1896). *Union Inst. for Sav.* v. *Phoenix Ins. Co.,* 196 Mass. 230, 232 (1907). *Trustees of Thayer Academy* v. *Corporation of the Royal Exch. Assur.,* 281 Mass. 150, 153-154 (1932). In the *Thayer Academy* opinion the court described some of the elements which distinguish the contract of insurance between an insurer and an owner from the contract of insurance between an insurer and a mortgagee. These were that: by the terms of the policies certain specified acts or defaults of the owners would render the policy void as to them but not as to the mortgagee; if the policy should become void as to the owners by reason of the act of default, the insurer will have the right to pay to the mortgagee the amount secured by its mortgage and get from it an assignment of its mortgage; in case of loss the owners are obliged at once to render a statement in writing setting forth the particulars of the loss, whereas the mortgagee is required to furnish only within a reasonable time proper written information in regard to the loss as to such matters as the mortgagee reasonably might be expected to know.

This quality of separate obligations has been noted particularly where, as in the instant case, the insurance policy contains a so called "standard mortgage clause." *Aetna*

*State Bank* v. *Maryland Cas. Co.*, 345 F. Supp. 903, 905-906 (N.D. Ill. 1972). *Early Settlers Ins. Co.* v. *Selected Risks Ins. Co.*, 346 F. Supp. 1272, 1275-1276 (E.D. Va. 1972). 11 Anderson, Couch's Cyclopedia of Insurance Law § 42:694 (2d ed. 1963). Under that clause "the result has been that the courts have held that the agreement of the company with the mortgagee being separate and divisible from that with the mortgagor, the mortgagee cannot be affected by any act or default of the mortgagor, and any breach of the policy terms and conditions committed by the mortgagor is no defense to an action by the mortgagee." 5A Appleman, Insurance Law and Practice § 3401, at 289-290 (1970). Thus the failure to notify the mortgagee may continue the policy in effect as to him. 17 Anderson, Couch's Cyclopedia of Insurance Law § 67:95 (2d ed. 1967).

Extending that analysis, an insurer has separate obligations to notify the insured and the mortgagee of cancellation of a fire insurance policy. See *Rawl* v. *American Cent. Ins. Co.*, 94 S.C. 299, 303 (1912) (mortgagee entitled to notice of cancellation of policy). In other jurisdictions, cases bringing before courts a valid notice to an insured or mortgagee, but not to both, have held the notice valid against the party who received it. For example, *Standard Fire Ins. Co.* v. *United States*, 407 F.2d 1295, 1300-1301 (5th Cir. 1969) (cancellation effective as to the insured who received notice, but not as to the mortgagee); *Aetna State Bank* v. *Maryland Cas. Co.*, 345 F. Supp. at 905-906 (no notice to mortgagee); *Boon* v. *Arkansas Farmers Mut. Fire Ins. Co.*, 224 Ark. 618, 622 (1955) (no notice of cancellation given to mortgagee, and the policy in full force as to him, even though mortgagee became sole owner of the premises before a fire occurred); *Savarese* v. *State Farm Mut. Auto. Ins. Co.*, 150 Cal. App. 2d 518, 522 (1957) (cancellation effective as to insured, but not as to mortgagee); *National Security Fire & Cas. Co.* v. *Mid-State Homes, Inc.*, 370 So. 2d 1351, 1353-1354 (Miss. 1979) (notice to owner and not to mortgagee entitles mortgagee to collect insurance proceeds because the obligations are separate); *Seeburger* v. *Citizens Mut. Fire Ins. Co.*, 267 Wis. 213, 218-219 (1954) (notices

were effective as to owner, but not as to mortgagee to whom they were not mailed). Compare *Wisconsin Barge Line, Inc.* v. *Coastal Marine Transp. Co.*, 285 F. Supp. 264, 273 (E.D. La. 1968) (failure to notify all owners); *Fifty States Management Corp.* v. *Public Serv. Mut. Ins. Co.*, 67 Misc. 2d 778, 784 (N.Y. Sup. Ct. 1971).

As to the plaintiffs' argument that any doubt in interpreting the cancellation provision must be resolved against the company which drafted the policy, that usual rule of construction does not apply when the provisions of a policy are mandated by statute. *Charles Dowd Box Co.* v. *Fireman's Fund Ins. Co.*, 351 Mass. 113, 119-120 (1966).

We hold, therefore, that the written notice of cancellation given to the plaintiffs was effective as to them.

*Judgment affirmed.*